# Phila. Trust Co., Ex'r of Cummings, v. Phila. & Erie R. R., Appellant.

*Ownership of railroad bonds—Evidence—Delivery—Sealing in envelope—Declarations against interest—Question for jury.*

In an action by an executor against a railroad company to recover the principal and interest of twenty-four bonds, there was evidence that the bonds were found in a desk in testator's room, in a sealed and stamped envelope addressed to the railroad company in a handwriting other than testator's; that all of testator's other securities were kept with a trust company; that the bonds were fourteen years overdue at the time of testator's death, and only the first coupon had been removed; that the bonds ran for twenty years, and all others of this issue had been paid at maturity; that, shortly after the original issue of the bonds, the railroad company being in need of money, authorized the bonds to be pledged for the payment of the personal notes of the directors (of whom testator was one) made for the use of the company; that twenty-four bonds had been pledged to a bank to secure testator's notes; that these notes had been paid by the company, and testator had secured the bonds from the bank. There was no evidence that the bonds were the same as the ones found in testator's desk. *Held,* that there was sufficient evidence from which a jury might infer that the bonds were the property of the company, and that it was error to withdraw the case from the jury.

In the above case the sealing of the bonds in an envelope addressed to defendant company was a declaration against testator's interest as to the ownership of the bonds, and indicative of an intention to deliver them to the rightful owner.

*Evidence—Inferences of fact.*

Inferences of fact are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind without the aid or control of any rules of law whatever, and such inferences are to be drawn by the jury, and not by the court.

*Coupons attached to bond—Statute of limitations—Act of 1713.*

The statute of limitations cannot be set up to prevent a recovery upon coupons which have not been detached from bonds; nothing can avail to defeat a recovery upon them but the presumption of payment which the law allows at the end of twenty years. Such a presumption however may be rebutted by evidence of nonpayment.

Not decided whether the statute of limitations may be pleaded against coupons detached from bonds, and in the hands of another than the holder of the bonds.

Argued Jan. 8, 1894. Appeal, No. 437, Jan. T., 1893, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1891, No. 841, on verdict for plaintiff, as executor of A. Boyd

Cummings, deceased.    Before STERRETT, C. J., GREEN, WIL-
LIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Re-
versed.

Assumpsit to recover amount of principal and interest on
railroad bonds.    Before BIDDLE, J.
 The facts appear by the opinion of the Supreme Court.
 Binding instruction for plaintiff was given. [1]
 Verdict and judgment for plaintiff for $62,833.32.

*Error assigned*, among others, was above instruction.

 *George Tucker Bispham, A. H. Wintersteen* with him, for
appellant.—The question of Cummings's ownership of the bonds
and coupons, under the evidence, was for the jury : Baggalley
v. Jones, 1 Campbell, N. P. 367 ; Willies v. Farley, 3 C. & P.
395 ; Peaceable v. Watson, 4 Taunt. 16 ; Tilghman v. Fisher,
9 Watts, 441 ; Maples v. Browne, 46 Pa. 458 ; Child v. Mc-
Kean, 2 Miles, 192 ; Duerson's Adm'r v. Alsop, 27 Gratt. 229.
 If Cummings ever held the bonds for value, the presumption
arising from lapse of time, together with the other circumstances
in evidence, made a case for the jury on the question of pay-
ment : Mayor of Kingston v. Horner, 1 Cow. 102 ; Hughes v.
Hughes, 54 Pa. 240 ; King's Exr. v. Coulter's Exr., 2 Grant,
77 ; Diamond v. Tobias, 12 Pa. 312 ; Briggs's Ap., 93 Pa. 485 ;
Peters's Ap., 106 Pa. 340 ; Hess v. Frankenfield, 106 Pa. 443.
 In any aspect of the case plaintiff was entitled to recover no
more than the principal of the bonds and the amount of such
coupons as matured within twenty years prior to bringing suit :
Emlen v. Lehigh Coal & Nav. Co., 47 Pa. 76 ; North Pa. R. R.
v. Adams, 54 Pa. 94 ; P. & R. R. R. v. Smith, 105 Pa. 195 ;
Friend v. Pittsburgh, 131 Pa. 305 ; Lash v. Von Neida, 109
Pa. 207 ; Summerville v. Holliday, 1 Watts, 507 ; Huey v. Ma-
con Co., 35 Fed. R. 481 ; Amy v. Dubuque, 98 U. S. 470 ;
Koshkonong v. Burton, 104 U. S. 668 ; City v. Lamson, 9 Wall.
477 ; City v. Butler, 14 Wall. 282 ; Clark v. Iowa City, 20 Wall.
583 ; P. & R. R. R. Co. v. Fidelity Co., 105 Pa. 217.

 *Richard L. Ashhurst* and *William H. Armstrong, Robert H.
Neilson* with them, for appellee.—The address upon the envel-

ope was not a circumstance from which any inference whatever could be drawn : Gilmore's Est., 158 Pa. 186; Roberts's Ap., 85 Pa. 84.

When parties set up title against a deed absolute in its terms, the burden of proof is upon them to show that it was intended only as a security for a debt; and if parol evidence be relied on for that purpose, it must be clear and convincing : Todd v. Campbell, 32 Pa. 250; Lingenfelter v. Richey, 92 Pa. 123; Bank v. Frankish, 91 Pa. 339; Smith's Ap., 144 Pa. 428.

It is submitted that, so far from it being settled law, as stated by appellant's counsel, that long unexplained delay will of itself suffice to put plaintiff on proof of consideration upon notice, the well settled rule is otherwise : Knight v. Pugh, 4 W. & S. 445; Holme v. Karsper, 5 Bin. 469; Swain v. Ettling, 32 Pa. 486; Hartman v. Shaffer, 71 Pa. 312; Gray v. Bank, 29 Pa. 365; Phelan v. Moss, 67 Pa. 59; Sloan v. Union Banking Co., 67 Pa. 470; Lerch Hardware Co. v. First Nat. Bank of Columbia, 109 Pa. 240; Brown v. Street, 6 W. & S. 221; Conmey v. McFarlane, 97 Pa. 361; Commissioners v. Clark, 94 U. S. 278; Mason v. Frick, 105 Pa. 162; Williamsport Gas Co. v. Pinkerton, 95 Pa. 62.

Whether the presumption arising from lapse of time is rebutted by a given state of facts is a question of law for the court : McQuesney v. Hiester, 33 Pa. 435; Beale v. Kirk, 84 Pa. 415; Reed v. Reed, 46 Pa. 239; Hughes v. Hughes, 54 Pa. 240; Gregory v. Com., 121 Pa. 611; Weidler v. Bank, 11 S. & R. 134; Bank of the United States v. Dunn, 6 Pet. 51; Henderson v. Anderson, 3 How. 73; Saltmarsh v. Tuthill, 13 How. 229; United States v. Liffler, 11 Pet. 86; Gaul v. Willis, 26 Pa. 259; Howard Express Co. v. Wile, 64 Pa. 201; Battles v. Laudenslager, 84 Pa. 446; Unangst v. Kraemer, 8 W. & S. 391; Tilghman v. Fisher, 9 Watts, 441; Diamond v. Tobias, 12 Pa. 312.

In King v. Coulter, 2 Grant, 77, 81, decedent owed a debt to defendant on simple contract contemporaneously with the running of the sealed note in question.

Hughes v. Hughes, 54 Pa. 240, is a case strongly in our favor. The defence relied, among other things, on the alleged good circumstances of the debtor and poverty of the creditor during the time elapsed.

In Briggs's Appeal, 93 Pa. 485, there was a receipt offered in evidence of which the language was so ambiguous as to leave in doubt whether it applied to the whole amount of the award or only to a payment of interest on it.

In Hess v. Frankenfield, 106 Pa. 440, besides other persuasive evidence of payment, there was a release made seven years after the judgment and twelve before suit brought, which might well be construed to include the claim in dispute.

Appellant does not refer to Rogers v. Burns, 27 Pa. 525, and Morrison v. Collins, 127 Pa. 28. Both these were cases in which circumstances not really persuasive were held rightly excluded from the jury.

It is well settled that the lapse of time, less than twenty years, without other persuasive evidence of payment, cannot be submitted to the jury, and that it is error to so submit it: Henderson v. Lewis, 9 S. & R. 379; Murphy v. Trust Co., 103 Pa. 379.

No presumption of payment can arise in the face of the positive testimony that the coupons were paid: Reed v. Reed, 46 Pa. 239.

The cases of Huey v. Macon Co., 35 Fed. R. 481; Amy v. Dubuque, 98 U. S. 470, and Koshkonong v. Burton, 104 U. S. 68, were decided upon statutes of limitations of Missouri, Iowa, and Wisconsin, which, by their terms, govern those cases.

The presumption of payment, which the law allows at the expiration of twenty years after a debt becomes due, is an act of tenderness towards the debtor, which is sustained by the absence of evidence, but, like other presumptions, it must yield to any circumstances and facts on which the mind can rest satisfied and by which it is rebutted: Eby v. Eby, 5 Pa. 435; Effect of Lapse of Time on Suits in Equity, 32 Am. Law Reg. 329; City v. Lamson, 9 Wall. 477; Lexington v. Butler, 14 Wall. 282; Meyer v. Porter, 2 Pac. R. 884.

OPINION BY MR. JUSTICE DEAN; April 2, 1894:

The plaintiff sued to recover from defendant the principal and interest on twenty-four $1,000 bonds issued in 1857 by the Sunbury and Erie Railroad Company, which last-named company had, by legislative enactment, been changed to the Philadelphia and Erie Railroad. There was no denial by defendant

of its obligation to pay the bonded indebtedness of the Sunbury and Erie Company. The only real contention, in view of the evidence, it seems to us, was, whether plaintiff or defendant was the owner of the bonds. Plaintiff was in possession, and offered them in evidence; defendant denied plaintiff's testator's right to the possession of them, and alleged they belonged to the Sunbury and Erie Railroad Company, to whose rights it had succeeded. The learned judge of the court below, being of opinion that defendant had adduced no sufficient evidence to rebut the presumption of title in plaintiff necessarily raised by the possession of the bonds, peremptorily directed a verdict against defendant for the principal and interest, which at date of trial amounted to $62,833.32. Judgment having been entered on this verdict, defendant brings this appeal, assigning for error the refusal of the court to submit the evidence, as to the ownership of the bonds, to the jury.

The possession of the bonds was prima facie evidence of title. Should the evidence, offered by defendant to rebut the inference warranted by the possession, have been submitted to the consideration of the jury?

This evidence is circumstantial, and must be viewed as a whole; if, when so viewed, it be not inconsistent with the presumption of ownership warranted by the possession, the learned trial judge was right in directing a verdict for plaintiff; in that case, then, there was no evidence of ownership in defendant to rebut the inference of ownership derived from possession. And this inconsistency must be such as may fairly bring the mind to an opposite conclusion from that warranted by the possession.

A. Boyd Cummings, at his death on March 1, 1891, was in his eighty-second year; he had been enterprising and successful in business, was possessed of a personal estate valued at nearly a half million dollars; besides, was the owner of considerable valuable real estate. The personal securities were deposited in many places; about two years before his death, at the suggestion of a friend, he collected them all together, and placed them in a box with the Philadelphia Trust and Safe Deposit Company; they consisted of a large number of different notes, stocks, bonds and mortgages; were carefully scheduled by number, denomination and name, and were safely kept with that company until his death. These twenty-four Sunbury

and Erie bonds were not among them. For many years preceding his death, in the winter, he lived with Mrs. Glass, at 910 Pine street, Philadelphia; he occupied a room on the third story, in which he had an old-fashioned desk. After his death, his executor found these bonds in that desk; there were in it no other papers of value. The bonds were in a sealed envelope, addressed: "Philadelphia and Erie Railroad, 233 South 4th street, Philadelphia." The address was not in the handwriting of Mr. Cummings, nor is it shown whose is the handwriting. On the envelope were three ten-cent postage stamps, uncanceled, of a date of issue not before 1882. The bonds bear date the 10th of September, 1857, and have interest coupons appended at rate of seven per cent per annum, payable 1st of October and April; the principal was payable 1st of October, 1877. All the coupons were still on these bonds except the first one payable April 1, 1858. The successor of the Sunbury and Erie Company, this defendant, in the twenty years preceding the 1st of October, 1877, the date the bonds matured, always paid the interest coupons when presented. In July, 1877, the defendant, under the terms of the bonds, advertised extensively to all holders of this issue, amounting to a million dollars, to present them at the office of the Philadelphia and Erie Railroad Company on the 1st of October following, for payment. All the bonds out except these twenty-four were presented and paid, or extended at a lower rate of interest.

It appeared from the books of the Farmers' and Mechanics' Bank of Philadelphia, where Mr. Cummings transacted part of his business, that, from Dec. 18, 1866, to June 22, 1877, he had borrowed money many times, in amounts from $1,200 to $10,000, generally giving his note at three months, with these bonds as collateral. On the date last named, the bonds were delivered to Cummings and taken away by him. Apparently, they were not out of his possession afterwards. Mr. Cummings was a director of the Sunbury and Erie Company from 1857, the year the bonds were issued, until 1862, when the road passed into the control of defendant company; he was a stockholder in the Philadelphia and Erie Company until after the maturity of the bonds. In 1857 and 1858, there is evidence, in the minutes, that the Sunbury and Erie Company was pressed for money, and that the bonds of this issue were authorized to be sold or

hypothecated to raise funds for the use of the company. Further, there was evidence, from the books of the Farmers' and Mechanics' Bank, that, on April 30, 1858, twenty-four $1,000 bonds of this issue were deposited as collateral to secure a loan of $12,000; the loan being at three months on a note drawn by W. G. Moorehead, then president of the railroad company, to the order of Cummings, and indorsed by him, which note was paid at maturity, but the twenty-four bonds were not taken away; as before noticed, they remained in the bank until June 22, 1877, when they were receipted for by Cummings and taken away by him. While the bonds remained with the bank, they were in the nominal ownership of Cummings, for, as we have seen, he borrowed money on them as collateral. There was other evidence which tended to show the company had authorized the borrowing of money on the notes or personal credit of its managers, among whom was Mr. Cummings, with the bonds of the company as collateral, and that all the loans so made, unless this was an exception, had been taken up by the company.

Whatever uncertainty there is in this case, if this was a loan of this character, arises from the inability of the company to identify these particular twenty-four bonds as having been delivered to anybody for purposes of hypothecation. So far as the books of the company show, they may have been a part of these bonds, or they may have been among those sold, the proceeds of which went into the company's treasury. In the absence of any other circumstances, the presumption would be the company parted with them for value received. But we have these facts: The company in 1857 and 1858 did authorize the hypothecation of bonds of this issue to raise money; on July 29, 1858, twenty-four bonds were hypothecated for a loan of $12,000 made to Moorehead, who was president, as drawer, and Cummings, who was manager, as indorser; presumptively, the note was paid by the drawer, Moorehead; there is nothing to identify these bonds as those of the company; they were deposited as collateral on April 30, 1858, by Cummings, indorser of the $12,000 note, and were the same bonds received by him June 22, 1877. As there remained only twenty-four bonds unredeemed by the call at maturity in 1877, it is not an unwarranted inference that the bonds in Cummings's possession at his

death were the same bonds taken away from the bank by him. Of course, he might have sold the twenty-four bonds taken from the bank, and bought twenty-four others between the 22d of June, 1877, and the date of the last redemption by the railroad company, but the coincidence in number and possession in the same person at the end of this comparatively brief interval, would render probable the inference that they were the same. If they were the same, then they came into Cummings's possession while he was a manager of the railroad, and were used in a transaction in which the president of the railroad was a party, for the purpose of raising money; and this at a time when the company had authorized the hypothecation of this issue of bonds by the officers for the purpose of raising money. Standing by itself, this transaction would have no significance, for there is no direct evidence that these particular bonds were delivered to either Moorehead or Cummings for this purpose, or that the $12,000 of money borrowed went into the company's treasury, or that the company furnished the money to lift the note.

The next fact is that the bonds remained in the bank nominally belonging to Cummings from July 31, 1858, to June 22, 1877, nearly twenty years; during this time, not one of the maturing coupons was cut off and presented for payment, although the interest on this issue was promptly paid on presentation of coupons at the office of the company, only a few squares distant. Cummings, from December 18, 1866, to November 22, 1870, used them as collateral for individual loans at short dates to himself; but in no instance did the loan equal the amount of the overdue coupons, which entitled him to the cash at the end of a ten minutes walk. While the use of the bonds by Cummings as collateral on individual loans to himself, was, as plaintiff argues, an implied assertion of ownership, yet the force of the implication is weakened by what may be termed the absurdity of the transaction, as business conduct. For example, he borrowed on his own note, on April 26, 1867, $2,000, at three months, with the whole twenty-four bonds and matured coupons as collateral. There was then due him in cash at the office of the company, to be had on mere demand, on the coupons, over $14,000. He borrows $2,000 when he had lying unused $14,000 not bearing interest, and paid interest on $2,000 which he did

not need to borrow ; that is, he practically puts up as collateral $14,000 in cash, for a loan of $2,000 in cash, and pays interest on the $2,000.   Certainly, the owner of the bonds had a right to do this if he wished, as argued by plaintiff, but when this alleged assertion of ownership is invoked, as corroborative of the inference of ownership from possession, the absurdity of the conduct detracts from its significance as evidence.   Regarded as a mere wasteful eccentricity, it is wholly immaterial; but if explicable on the theory that the possessor of bonds not his own, was willing to borrow money on them as collateral, without actually converting them to his own use by an absolute relinquishment of possession, the apparent exercise of ownership in no way strengthens the inference warranted by the possession.

The next fact, which ought not to be disregarded, is the delay in demanding payment of either the bonds or coupons, when the holder knew they had been called as stipulated by their terms.   From October, 1877, until his death in 1891, a period of more than thirteen years, he held this large amount of personal securities, in great part wholly unproductive, in his desk. This of itself is immaterial.   The law imposes upon no holder of a bond a penalty for not demanding and exacting that which is owing to him, but, as an act out of the course of conduct of the average business man, it may, with other facts, have weight in determining a question of ownership.   The presentation for payment of either the coupons or the bonds would have located the claimant; if the claim were wrongful, the assertion of it might have led to investigation, which might or might not have resulted in disagreeable consequences.

The next fact is the insecurity of the place where this large amount of bonds was kept.   As a business man, Cummings knew the value of these bonds, and that they could be easily appropriated by a dishonest person ; yet, apparently he kept them in an old desk, in a room and house in no way protected.   While he lacked system in the care of his other securities of a similar character, there is no evidence he kept them in places wholly unsafe as he kept these.   Two years before his death, he gathered his personal estate together, scheduled it, and deposited it in a secure place, but left these out.   As the actual owner, he might have done this; the mere fact that we do not know why he did it, warrants no inference unfavorable to his owner-

ship ; but this fact, with others, may prompt the natural query, was he thus negligent as to these bonds because he was not the owner ?

The next fact is the condition in which the bonds were found after his death. They were in an envelope, sealed and addressed : " Philadelphia and Erie Railroad, 233 South 4th Street, Philadelphia." On the envelope were three uncanceled ten cent stamps. Presumably, this was sufficient postage to pay for their delivery. Suppose they had been deposited in the post office, they would then have been delivered to the company ; the package would have been opened ; not a line would have been found inclosed, indicating from whom they came ; the postmark would have shown they had been deposited in the office in Philadelphia. An examination of the handwriting of the address would have disclosed nothing farther than is here disclosed, that the address had been written by some one whose handwriting was unknown. But the company would have been warranted in assuming that the bonds belonged to it ; that whoever sent them was not the owner, and did not even wish to have the fact known that for long years they had been in his possession. The condition of the envelope, the absence of any explanation within it, the address on the outside, the affixing of the necessary stamps for delivery, all constitute a fact indicative of a disclaimer of ownership, and an admission of ownership in the company. If the package had been actually mailed and delivered to the company, it would have been conclusive as to title, because the prima facie fact of possession in Cummings would have disappeared ; but not having been mailed, the possession still remained in Cummings. These facts are only material as tending to show that, sometime between 1882 and his death, he made an admission that the bonds were not his, but the property of defendant. This was more than the declaration of an intention to make a gift, which avails nothing without a delivery ; it was a declaration against his interest as to the ownership of the bonds, and indicative of an intention to deliver them to the rightful owner. A delaration, it is true, not so clear and unequivocal as, of itself, to warrant a determination of title against plaintiff, but a significant fact, to have its proper weight, along with the other facts, in reaching the truth. All the facts urged by defendant

as inconsistent with ownership in Cummings are to be considered as a whole and not taken up singly. When thus considered, what belief is induced in an unprejudiced mind?

In looking at plaintiff's testimony, we find but one established material fact on which the right to recovery is based—the fact of possession. From that fact is inferred the essential one, that Cummings was the owner of the bonds. But if other facts be established from which an opposite inference may with reason be drawn, the inference essential to recovery is rebutted. We have attempted to indicate such facts. It is not for us to express our opinion as to what inference ought to be drawn from them. As is said in Burrill on Circumstantial Evidence, p. 53: " Another and a material point of distinction between presumptions of fact and presumptions of law is in regard to the tribunal appointed to deal with them. The inferences, as we have seen, are to be made upon a basis of actual fact, and as nearly as possible according to the exact truth of the particular case which is the subject of inquiry. Hence the deduction of them necessarily falls within the particular province of that tribunal, or rather that branch of the tribunal whose allotted duty it is to investigate and declare the truth of disputed matters of fact, namely, the jury. In the process of inference, the jury merely exercise their natural faculties of judgment and common sense." And, as is said in Greenleaf on Evidence, sections 44 to 48, when speaking of these inferences of fact, " they are derived wholly and directly from the circumstances of the particular case, by means of the common experience of mankind, without the aid or control of any rules of law whatever."

It seems to us the court could not properly withdraw this evidence from the jury. It may be that it will fail to convince them that plaintiff's right to the bonds has been successfully attacked, but still they must say so, and not the court. While defendant's evidence did not convince a learned and impartial lawyer, still it might have convinced twelve intelligent and impartial laymen. As under the law the laymen are the judges of disputed facts, and the probable or reasonable inferences from them, we cannot say, when there was evidence sufficient to sustain a verdict for defendant, it ought not to have been submitted to them; for there is, in this case, no rule of law to guide us in reaching a conclusion, a conclusion which must be

wholly based on presumptions of fact. The simple question is, on this evidence, what is the truth?

We do not see, as argued by defendant's counsel, how on the facts any presumption of payment can here arise. The whole evidence, both that of plaintiff and defendant, established beyond question the bonds never were paid, because not presented. Suit was brought within fourteen years after their maturity. There was no place for presumption in the face of the indisputable fact of nonpayment. The case turns on whether Cummings was the owner absolutely of the bonds, or was a mere bailee of defendant. The same may be said concerning the coupons maturing more than twenty years before commencement of suit. Under the facts, no distinction could be drawn between principal and interest. All the coupons except the one first maturing were attached to the bonds. As against them, no statute of limitation could be set up; nothing could avail to defeat a recovery but the presumption of payment which the law allows at the end of twenty years, as an act of tenderness towards the debtor. This presumption, where the suit is on a specialty, is not such conclusive answer to a stale demand as is a positive statutory enactment which extinguishes the demand, and requires a new promise to revive it. It is a presumption merely which may be rebutted by evidence of nonpayment: Eby v. Eby, 5 Pa. 435; Reed v. Reed, 46 Pa. 239. Mr. Van Zandt, treasurer of defendant company, testifies positively, the coupons maturing more than twenty years before suit, were not paid by the company. Any presumption of payment is therefore rebutted by defendant's own testimony that the coupons had not been paid. And as is held in City v. Lamson, 9 Wall. 477: " Coupons are not received or intended to have the effect of extinguishing the interest due on the bond. . . . . They are given simply as a convenient method of obtaining payment of the interest as it becomes due upon the bonds. There is but one contract, and that evidenced by the bond, which covenanted to pay the bearer $500 in twenty years with semiannual interest at rate of ten per cent per annum. The bearer has the same security for the interest that he has for the principal." If the coupons had been detached from the bonds, and had passed into the hands of another than the holder of the bonds, it may be it would be held that the contract

evidenced by the specialty would not, after the lapse of the statutory limitation, protect them in the hands of a third party; but we pass no opinion on this question. It is sufficient to say these coupons were not only in the possession of the holder of the bond, but in fact had never been separated from it; therefore, the same contract covered interest as well as principal.

But on the main question, as to who was the rightful owner of the bonds, we are of the opinion there was evidence for the consideration of the jury. Therefore the judgment is reversed and a new venire awarded.

160  602
179  539

160  602
199  384

160     602
203     ²514

160    602
41SC²168