The Philadelphia Trust, Safe Deposit & Insurance Company, Executor of the Last Will of A. Boyd Cummings, deceased, *v.* The Philadelphia & Erie Railroad Company, formerly the Sunbury & Erie Railroad Company, Appellant.

*Practice, C. P.—Charge of court—Duty of trial judge.*

Where a case has been reversed by the Supreme Court and sent back for a retrial, the trial judge, while having the right to adhere to his individual opinion, is bound to officially carry out the instructions of the Supreme Court, not alone by a submission of the case, but by a fair and impartial submission of the evidence.

A charge whose tendency as a whole is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error.

*Practice, C. P.—Charge of the court—Answers to points—Ownership of railroad bonds.*

In an action by an executor against a railroad company to recover the principal and interest of the bonds of the company, where the evidence for the defendant tends strongly to show that the testator had been a mere bailee of the bonds, and had disclaimed ownership of them, the trial judge commits reversible error in dwelling at length upon the fact that there was no evidence of the bailment to be found in the books of the company, and in failing to call the jury's attention to the facts which tended to establish a bailment. The one-sidedness of the general charge is not cured by taking up the written points on both sides, and answering them by the words "affirmed" and "refused."

*Ownership of railroad bonds—Evidence—Question for jury.*

In an action by an executor against a railroad company to recover the principal and interest of twenty-four bonds, there was evidence that the bonds were found in a desk in testator's room, in a sealed and stamped envelope addressed to the railroad company in a handwriting other than testator's; that all of testator's other securities were kept with a trust company; that the bonds were fourteen years overdue at the time of testator's

death, and only the first coupon had been removed; that the bonds ran for twenty years, and all others of this issue had been paid at maturity; that, shortly after the original issue of the bonds, the railroad company, being in need of money, authorized bonds of this issue to be pledged for the payment of the personal notes of the directors (of whom testator was one) made for the use of the company; that twenty-four bonds had been pledged to a bank to secure testator's notes; that these notes had been paid by the company, and testator had secured the bonds from the bank. There was no evidence that the bonds were the same as the ones found in testator's desk. There was nothing on the books of the railroad company to show that the bonds were held by the testator as a bailment. *Held*, that the question as to the ownership of the bonds was for the jury, notwithstanding the weight of the testimony in favor of the railroad company.

*Evidence—Hearsay evidence—Declarations of decedent.*

In an action by an executor to establish the ownership of property claimed to be the property of the testator, declarations made by the testator to a third person are not evidence to establish the executor's claim.

In an action by a testator against a railroad company to determine the ownership of certain bonds of the company which the latter claimed had been held by the testator merely as bailee, declarations of the president of the railroad company to the effect that the bonds were not an existing indebtedness of the railroad company are admissible.

*Practice, C. P.—Statement of counsel to the jury—Misconduct of counsel.*

Where a case has been reversed by the Supreme Court and sent back for retrial and no dissent of any of the justices appears of record, it is improper for counsel to state to the jury that the opinion of the Supreme Court was not unanimous. The jury is not a court of appeals from the judgments of the Supreme Court, and the weight of judgments of that court is not to be determined by the unanimity or want of unanimity among the justices pronouncing them.

Argued Jan. 10, 1896.   Appeal, No. 437, Jan. T., 1895, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1891, No. 841, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Reversed.

Assumpsit to recover amount of principal and interest of railroad bonds.   Before BIDDLE, P. J.

The facts appear by the opinion of the Supreme Court, and by the former report of this case in 160 Pa. 590.

At the trial defendant offered to prove by the witness on the stand, George B. Roberts, that in 1877, at or shortly before the

40 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Statement of Facts—Charge of Court.                    [177 Pa.

maturity of the bonds, a syndicate, of which the witness (who was then vice president of the Pennsylvania Railroad Company and acting for it) was a member, was formed for the purpose of purchasing or taking up such bonds as the holders were not willing to extend; that in carrying out the plan of the syndicate inquiries were made by witness as to a block of $24,000 of said bonds which had not been presented for extension or payment, said inquiries being made of the then president of the Philadelphia & Erie Railroad Company, Robert Thompson, now deceased, and that no information could be obtained as to the holder or holders of said bonds. Objected to. Objection sustained and exception. [9]

Defendant further offered to prove by said witness that in response to the inquiry made in the foregoing offer the witness was informed by the said president of the defendant company that these bonds would never be presented. Objected to. Objection sustained and exception. [10]

When Catherine Ubil, a witness for plaintiff, was on the stand, she was asked this question:

Q. State whether, at any time, Mr. Cummings requested you to clean out his desk, and what he said, and how it came about.

Objected to that what Mr. Cummings said could not be evidence. Objection overruled. Exception to defendant.

A. Early in the year 1889 Mr. Cummings asked me—I had fixed Mrs. Glass' desk up very nicely, and he liked that—and he asked me if I would come upstairs and fix his, as he had not been through his desk for twenty years, and he had forgotten what was in it; but I did not do it until later in the season, and then I did not get through with it. [11]

The court charged as follows:

This suit, as you have heard, is brought by the executor of A. Boyd Cummings against the Philadelphia & Erie Railroad Company, to recover from them the principal and interest on $24,000 bonds issued by that company in the year 1857. [The executor has presented these bonds, and their execution is not denied, consequently he has made out his case, and he is entitled to receive his money unless the defendant can satisfy you that there is some reason why he should not. The reason alleged by the defendant in this case is a very simple and concise one.

It is that he should not recover these bonds because they did not belong to him; that they belonged to the defendant, and that is the question for you to decide in this case.] [8]    Do you believe those bonds belonged to Mr. Cummings during his lifetime, or do you believe that they did then belong and do now belong to the Philadelphia & Erie Railroad Company? That is the question for you to decide. Of course, if they belonged to Mr. Cummings, his executor is entitled to the money. If they belong to the company, undoubtedly he is not, and your verdict in that case should be for the defendant.

Now you would suppose in a case of this sort that the defendant, to establish the fact which he alleges, would produce for that purpose the books of the Philadelphia & Erie Railroad Company, and would point out to you on the books of that company that $24,000 worth of bonds, numbered consecutively from one date to the other, had been transferred to Mr. A. Boyd Cummings for the purpose of using them as collateral to raise money for the benefit of the company. No such thing appears upon the books of the company; no such fact is stated in any book or in any memorandum. You would suppose also that the whole history of the issue of these bonds would be then made so clear, inasmuch as these books are the defendant's books, as would enable him to satisfy you of the truthfulness of his claim. Strange to say, there is nothing on the books, according to the present treasurer, which shows that these bonds were not issued for a valuable consideration. Therefore, as far as the books are concerned, on both those points they fail to establish the claim of the defendant.

This company was presided over by one of the most distinguished men of business in Philadelphia, Mr. J. K. Moorehead, whom you probably all know as a partner in the house of Jay Cooke. No man was more competent or fitted for the transaction of business than he was. He was the president of this company. It appears that for nineteen years he knew that $24,000 of the bonds of this company made no appearance; no demand was made for the interest, and you would suppose it would be impossible that a man should not say, "Why, where are these bonds? where are these $24,000 of bonds? If they are not issued in the regular course of business, where are they?" You would suppose that that was made apparent

42 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Charge of Court. [177 Pa.

every six months. There was no demand for these $24,000 of bonds, and you would suppose that the president of the company would say, "But what is the meaning of this; that there is no memorandum of this?" If it had been explained to Mr. Moorehead, "Why, those are collateral given to Mr. Cummings, who was a director of the company," you would think he would have said, "Well, that must be made apparent on the books. Mr. Cummings is alive, I am alive, and the people who have the whole knowledge of this subject are alive; that must be put on the books. Why, you have got outstanding against your company these obligations payable to order; I cannot permit that the records of this company should not show if that is not true; if they are not payable to order and they belong to us, that that fact does not appear." I say it is strange to us that during all that term of years Mr. Cummings was never called upon to return these. He was not borrowing money then, at all events; he had long since, if he ever did, ceased to borrow money for them, and therefore it would be perfectly proper, not even uncourteous, to say to him, "Will you be kind enough to return these bonds which were handed over to you as collateral?" Strange to say, there was no evidence of such a thing having been said to this gentleman in his lifetime, and he died, as you have heard, in the possession of these bonds, and they are presented here after his death by his executors.

Now the defendant, as I say, does not set up that this appears upon the books of the company. They set up a number of circumstances which are certainly of a peculiar character, and they ask you from these circumstances—from the fact of the way in which they were kept; from the fact of their not having been presented; from the fact of the indorsement on the package which contained these bonds, and a number of points which I will refer to directly—they ask you to infer that these bonds belong to them; not that they belong to anybody else, but that they did not belong to Mr. Cummings and did belong to them.

Now those are the facts which are submitted for your consideration, and it is for you to say, and for you alone to say, whether those facts which they have proved, that the true ownership of those bonds is in the company and not in Mr. Cum-

mings. That is the question which you will have to decide in this case.

Now both counsel have presented to me what are technically called points, which they ask me to speak to you about. They have covered almost the whole case. Probably by answering those points I will better state what I have to say than if I should endeavor, without reference, to go over them and then go over them a second time. I therefore take up these points which I have been asked to charge you upon, which contain, I say, all the grounds on which they ask a verdict on either side.

Now the grounds upon which the defendant contends that he has established the ownership of these bonds in the defendant company are inferable from the points which he asks me to charge you upon, which are as follows :

8. Under all the evidence the verdict should be for the defendant. *Answer :* Refused. [1]

9. The fact of the possession of these bonds by A. Boyd Cummings raises the presumption of ownership in him, but the fact that the bonds remained in his possession from July 31, 1858, to June 22, 1877, for a period of nearly twenty years, without a coupon being cut off or presented for payment, when the interest was regularly paid upon all the bonds of the company; the fact that these bonds remained in his desk for a period of years unproductive; the fact that the place where these bonds were kept by him was an insecure place; the fact that he did not take the same care of those securities as he did of his own securities ; the fact that he borrowed money from the Farmers & Mechanic's Bank of Philadelphia, with which he transacted business from December, 1866, to June 22, 1877, the sums so borrowed varying from $1,200 to $10,000, for which amounts these bonds, being then in the bank, were held as collateral, although at the time said sums of money were so borrowed, there were upon said bonds, matured coupons, of a greater amount than the sum so borrowed; the fact that two years before his death he scheduled his personal property and did not include these bonds in such schedule; the fact that these bonds were found in an envelope sealed and addressed " Philadelphia and Erie Railroad Company, No. 233 South Fourth Street," upon which envelope there were three uncanceled 10 cent stamps, evidencing a disclaimer of ownership and an intention to deliver

44 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Charge of Court—Points. [177 Pa.

to the company, the owners of the bonds ; the fact that these bonds were thus set aside for delivery to the company defendant and manifestly intended to be delivered, destroy this presumption, and the verdict should be for defendant. *Answer:* Refused. [2]

Some of plaintiff's points with the answers were as follows:

2. The burden of proof is on the defendant to show by clear and satisfactory evidence that the bonds were delivered by the Sunbury & Erie Railroad to A. B. Cummings in the year 1858, as bailee or in trust for the said company and without consideration. *Answer:* Affirmed. [3]

5. The fact which is proved and not denied, that in their annual report for 1863 and the years following, until the maturity of the bonds, the railroad company set forth these bonds as duly issued and outstanding, is material and persuasive evidence that at a time when these transactions were fresh in the minds of the directors and officers of the railroad company it was known to them that the bonds in suit had been duly issued for value, and that no defense or trust then subsisted in respect thereto. *Answer:* Affirmed. [4]

6. The facts that in the annual reports for 1862 the bonds issued under the mortgage of 1857 were stated at six hundred and forty-four thousand, and in that of the following year, 1863, at one million, is evidence from which the jury would be justified in drawing the conclusion that the whole account of bonds outstanding in 1862 had been adjusted and the amount duly issued ascertained, and that the figure of $1,000,000 bonds, which included those in suit, was fixed after due and proper examination of the facts when fresh in the minds of the directors and officers. *Answer:* Affirmed. [5]

7. That the statement in the agreement with the Pennsylvania Railroad Company made in 1870, reforming and affirming the lease of 1862, that the amount of the bonds due and outstanding under the mortgage of 1857 was $1,000,000, which included the bonds in suit, and the consequent undertaking of the Pennsylvania Railroad Company to pay the interest on these bonds as duly issued, is presumptive evidence of the truth of the statement. *Answer:* Affirmed. [6]

8. The fact that this statement of the amount of the bonds secured by the mortgage of 1857, duly issued and outstanding

at $1,000,000, which included the bonds in suit, was continued in all reports and other documents and statements of the railroad company unchanged until after the period of maturity of the bonds in 1877, and was then changed after it was found the bonds in suit had not been presented for payment or exchange to $976,000 in the report for the following year, would justify the jury in finding that the theory of there having been a bailment or trust in these bonds was an afterthought, suggested by the circumstance of the delay in presentation. *Answer:* Affirmed. [7]

Verdict and judgment for plaintiff for $69,720.20. Defendant appealed.

*Errors assigned* were, (1–8) above instructions, quoting them; (9–11) rulings on evidence.

*George Tucker Bispham* and *John G. Johnson*, with them *A. H. Wintersteen*, for appellant.—The prima facies of title in the plaintiff arising from mere possession of the securities were sufficiently overcome, and shift the burden of proof of ownership upon the plaintiff: Bailey's Onus Probandi, I. 5; 2 Am. & Eng. Ency. of Law, 656; Lee v. McMillan, 23 W. N. C. 483; 1 Greenleaf on Evidence, 14th ed. 74; Central Bridge Corporation v. Butler, 2 Gray, 132; Powers v. Russell, 13 Pick. 76; 2 Wharton on Evidence, 1126; Owen v. Bartholomew, 9 Pick. 521; Reynolds' Theory of Law of Evidence, sec. 9; 1 Rice on Evidence, sec. 247; Duerson's Admr. v. Alsop, 27 Gratt. 229.

The trial judge erred in inadequately submitting the case to the jury, to the defendant's prejudice: Leibig v. Steiner, 94 Pa. 466; Washington Mut. Fire Ins. Co. v. Rosenberger, 3 W. N. C. 16; Penna. Canal Co. v. Harris, 101 Pa. 80; Young v. Merkel, 163 Pa. 513; Peirson v. Duncan, 162 Pa. 187; Reber v. Herring, 115 Pa. 599.

Even had Cummings been alive the evidence of Miss Ubil was admissible: Gordon v. Bowers, 16 Pa. 226; Graham v. Hollinger, 46 Pa. 55; McGregor v. Sibley, 69 Pa. 388.

*R. L. Ashhurst* and *W. H. Armstrong*, with them *Boyd C. Barrington*, for appellee.—The burden of proof was on the defend-

ant: Haverstick v. Penna. R. R., 171 Pa. 106; 2 Wharton on Evidence, sec. 1266, note 2; Child v. McKean, 2 Miles, 192; Todd v. Campbell, 32 Pa. 250; Longerfelter v. Richey, 62 Pa. 123; Bank v. Frankish, 91 Pa. 339; Smith's Est., 144 Pa. 428; Knight v. Pugh, 4 W. & S. 445; Holme v. Kasper, 5 Binney, 469; Swain v. Ettling, 32 Pa. 486; Hartman v. Shaffer, 71 Pa. 312; Gray v. Bank, 29 Pa. 365; Phelan v. Moss, 67 Pa. 59; Sloan v. Union Banking Co., 67 Pa. 470; Lerch Hardware Co. v. First Nat. Bank, 109 Pa. 240; Brown v. Street, 6 W. & S. 221; Cooney v. MacFarlane, 97 Pa. 361; Commissioners v. Clark, 94 U. S. 278.

Miss Ubil's testimony was properly admitted: Stephen's Evidence, article 9; Craig's App., 77 Pa. 448; Wagonseller v. Simmers, 97 Pa. 465; Richardson v. Stewart, 4 Binn. 198; Jones v. Brownfield, 2 Pa. 55; Sterner v. Gower, 3 W. & S. 136; Koch v. Howell, 6 W. & S. 350; Merkel's App., 89 Pa. 340; Wright v. Tatham, 7 A. & E. 313; R. R. v. Coyle, 55 Pa. 396; Waedel v. R. R., 95 N. Y. 274; Elkins v. McKean, 79 Pa. 493; Fire Ins. v. Marr, 46 Pa. 504.

The Supreme Court will not reverse for an error which does no harm: Pentz v. Clark, 100 Pa. 450; Dunkle v. Harrington, 101 Pa. 465; McCahan v. Wharton, 123 Pa. 424; Trego v. Pierce, 119 Pa. 139; Ziegler v. Handrick, 106 Pa. 87; Steelman v. Steelman, 1 Harr. 166; Horford v. Wilson, 1 Taun. 12; Teynham v. Tyler, 6 Bing. 561.

OPINION BY MR. JUSTICE DEAN, October 6, 1896:

This case was here before, and is fully reported in 160 Pa. 590. In the first trial, the court below peremptorily directed a verdict for plaintiff, on the ground there was no evidence to rebut the presumption of ownership of the bonds sued on, raised by the fact of possession. We thought differently, and sent the case back that the evidence might be submitted to the jury. On retrial, the jury has found for plaintiff, and we have this appeal. In reviewing this case, what we said when it was here before as to the significance of the evidence, should, without repetition, be kept in mind. In that case, we attempted to show there was ample evidence to overcome the presumption of ownership raised by the single fact of possession. No fact testified to in the case was the subject of dispute; what inference the un-

disputed facts warranted was alone disputed. Although the
learned judge of the court below formally carried out the direc-
tion to submit the evidence to the jury on a retrial he, manifestly,.
did so with great reluctance. While his right to adhere to his
individual opinion is not doubted, his duty to officially carry
out the instructions of this court, by not alone a submission,.
but by a fair and impartial submission of the evidence, is un-
doubted. He is not responsible for our errors, however plain
they may appear to him ; we are for his, when they appear to
be so to us. We are led to these remarks because we think any
unprejudiced mind, on a comparison of this charge with the evi-
dence, must conclude it is not such a charge as the importance
of the cause and the evidence demanded.

The proposition involved in the issue was whether A. Boyd
Cummings was the absolute owner of the bonds sued on, or
merely the bailee of defendant. The learned judge said to the
jury : " The executor has presented these bonds, and their execu-
tion is not denied, consequently he has made out his case, and
he is entitled to receive his money, unless the defendant can
satisfy you there is some reason why he should not." This is
a correct statement of the question at issue ; the only fact in
favor of the plaintiff was, he was in possession of the bonds,.
which on their face disclosed no restriction on the title ; there-
fore, arose the presumption of ownership from the fact of pos-
session. The defendant did not deny that Cummings' possession
was originally rightful, but alleged he was a mere bailee of the
bonds ; that at the time they went into his possession as bailee he
was a manager of the company, and the contract of bailment,.
through his neglect and that of other officers of the company,.
had not been reduced to writing ; there was no written receipt,
nor was there any written entry on the books. But then, to
show the bailment, the defendant proved circumstances occur-
ring through many years, even to what was almost an express
written disclaimer of ownership, every one of which circum-
stances, without explanation, was inconsistent with the absolute
ownership of the bonds by Cummings ; and one of them, the
writing on the envelope, reconcilable on no reasonable theory
other than that of ownership by defendant. As already stated
not one of the significant facts proved by defendant was con-
tradicted, nor so far as we can see, disputed by plaintiff ; the

48 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Opinion of the Court. [177 Pa.

inference warranted by them alone was disputed. The defendant was then in this attitude; it says, true, the possession is in the plaintiff, and that shows prima facie title in him; we admit that his possession at first was not wrongful, and that the company put in him this possession for a specific purpose, which, however, was accomplished, and then he should have at once returned the bonds to the company; owing to his own neglect and that of other servants of the company, the transaction was not reduced to writing, but we prove indisputably, facts from which it can be clearly inferred, and which warrant no other inference.

Now the learned judge, instead of stating this situation to the jury, and calling their attention to the facts which tended to establish a bailment, thus rebutting the inference warranted by the single fact of possession, takes up the fact of the absence of a written contract, and earnestly argues to the jury that this rebuts the inference claimed to be warranted from the undisputed and significant facts; his argument, in effect, is, and the jury must have so understood him, that because defendant had proved no written contract of bailment, it was highly improbable there was any contract. He thus speaks: " Now you would suppose in a case of this sort, that the defendant, to establish the fact which he alleges, would produce for that purpose the books of the Philadelphia & Erie Railroad Company, and would point out to you on the books of that company that $24,000 worth of bonds, numbered consecutively from one date to the other, had been transferred to Mr. A. Boyd Cummings for the purpose of using it as collateral to raise money for the benefit of the company. No such thing appears upon the books of the company; no such fact is stated on any book or in any memorandum. You would suppose also that the whole history of the issue of these bonds would then be made so clear, inasmuch as these books are the defendant's books, as would enable him to satisfy you of the truthfulness of his claim. Strange to say there is nothing on the books, according to the present treasurer, which shows that these bonds were not issued for a valuable consideration. Therefore, as far as these books are concerned, on both these points they fail to establish the claim of the defendant."

The meaning of this argument, as we understand it, is, that the defense is incredible, because defendant has not supported

it by irrefutable evidence from its own books. If such evidence had existed, neither the court below nor we, in all probability, would have been troubled by trying the issue. It is the absence of absolutely incontrovertible evidence on both sides on questions of fact, that gives rise to the controversy raised by the issue. The theory on which the court put the case to the jury may be fairly stated thus:

Important contracts of corporations ought to be written in the corporation's books.

This is an important contract; it is not written in the books.

Therefore, it is highly improbable there was such a contract.

This is not a fair presentation of the fact; the conclusion is not warranted, either by our observation or consciousness. As concerns written evidence of a contract, neither side had any advantage; there was not a written word on or in the bonds indicating that Cummings was the owner. They were payable to John Lindsey, treasurer, and by him transferred in blank. There was nothing written in the books evidencing a bailment. The law, however, raised the presumption of fact that he who was in possession of the bonds was the owner; this gave the vantage ground to plaintiff, but the presumption stopped just at that point; it did not go further, and from the absence of a written contract of bailment on the books, also, raise the presumption there was no such contract. The contract, as alleged by defendant, was then the very thing to be proved, and the fact of no written contract being shown was a simple fact to be viewed by the jury in connection with the other facts in evidence. We all know important contracts, very often, either from pure neglect, indifference, the subject of them, or a relation of confidence between the parties, are not reduced to writing, and that about half the lawsuits we try have their source in this very neglect. If we were conscious, from a common knowledge of men's business habits, that all important contracts were reduced to writing, it would be probable, from the absence of a writing, this particular contract had no existence. But our knowledge being just the contrary, there is neither a presumption of law nor fact raised in plaintiff's favor by the failure to put the contract in writing. Yet, as the court put the case to the jury, there was really imposed on defendant the burden of rebutting two presumptions, one raised by the possession, and

50 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Opinion of the Court. [177 Pa.

the other by the nonproduction, of a written contract. But, even assuming that this fact was entitled to the significance the learned judge gave it, that from our knowledge of men's ordinary conduct in business affairs it was highly improbable such a contract was made, because not in writing, surely, on the same theory of arriving at the truth from common knowledge of men's business habits, he should have directed the attention of the jury to the facts proved by defendant. Three facts were undisputed, the written indorsement on the envelope, the borrowing of cash on overdue coupons equivalent to cash, and the scheduling by Cummings of his securities, leaving out these bonds. Each one of these acts, from our knowledge of men, was more significant of his nonownership of the bonds than the absence of a written contract was of such ownership. Take the first named. A business man capable of accumulating a large estate, having in his possession $24,000 of bonds, incloses them in an envelope and indorses on the envelope what is in substance a written disclaimer of ownership in himself, and an averment of ownership in another; seals the envelope, and puts upon it the proper stamps as if for delivery to the true owner. What is the inevitable conclusion from this fact? Not that it is "strange" or merely "peculiar," but that it is highly probable the possessor of the bonds is not the owner, and that the one indicated by him in writing is. It seems to us impartiality demanded that the improbability theory of defendant should have been presented to the jury as conspicuously as that of plaintiff; but in the charge proper it is scarcely adverted to.

But the learned judge proceeds to lay further stress on the absence of book entries, as follows :—" This company was presided over by one of the most distinguished men of business in Philadelphia, Mr. Moorehead, whom you probably all know as a partner in the house of Jay Cooke. No man was more competent or fitted for the transaction of business than he was. He was the president of this company. It appears, that for nineteen years he knew that $24,000 of this company made no appearance; no demand was made for the interest, and you would suppose it would be impossible that a man should not say, Why, where are these bonds? Where are these $24,000 of bonds? If they are not issued in the regular course of business, where are they? You would suppose that that was made

apparent every six months. There was no demand for these $24,000 of bonds, and you would suppose that the president of the company would say, But what is the meaning of this, that there is no memorandum of this? If it had been explained to Mr. Moorehead, why, those are collateral given to Mr. Cummings, who was a director of the company, you would think he would have said, Well, that must be made apparent on the books. Mr. Cummings is alive, I am alive, and the people who have the whole knowledge of this subject are alive ; that must be put on the books. Why, you have got outstanding against your company these obligations payable to order ; I cannot permit that the records of this company should not show if that is not true ; if they are not payable to order and they belong to us, that that fact does not appear. I say it is strange to us, that during all that term of years Mr. Cummings was never called upon to return these. He was not borrowing money then ; at all events, he had long since, if he ever did, ceased to borrow money for them, and therefore it would be perfectly proper, not even uncourteous, to say to him, Will you be kind enough to return these bonds which were handed over to you as collateral? Strange to say there was no evidence of such a thing having been said to this gentleman in his lifetime, and he died, as you have heard, in the possession of those bonds, and they are presented here after his death by his executors."

There is here the statement, although probably not so intended, that Moorehead was president of the road for nineteen years, that is, from 1858 to 1877, accompanied with the personal opinion of the judge that no man was more competent for the transaction of business, and then the suggestion is made of the utter improbability of Mr. Moorehead permitting this transaction to rest entirely in parol for this long time. Mr. Moorehead was elected president in 1857, and acted as such until 1864, a period of seven years instead of nineteen ; his supervision as president over the books was considered important by the learned judge, and especially did he impress upon the jury the fact of the neglect of a thoroughly competent officer to enter the contract in the books for nineteen years, as showing that it was incredible a contract of bailment could have existed. The mistake in time, was not, in itself, a very material fact,

52 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Opinion of the Court. [177 Pa.

but the court treated it as material; the mistake, then, became material error only because deemed by the court a material fact.

The court then proceeds further on the same subject and to the same effect. From the beginning of a very brief charge almost to the end, is presented, most prominently, an argument to the jury that the fact of no entry in the books is contradictory of any theory deducible from defendant's evidence. Then, in a brief paragraph, defendant's evidence is thus referred to : " They set up a number of circumstances which are certainly of a peculiar character, and they ask you, from these circumstances —from the fact of the way in which they were kept, from the fact of their not having been presented, from the fact of the indorsement on the package which contained these bonds, and a number of points which I will refer to directly,—they ask you to infer that these bonds belong to them ; not that they belong to anybody else, but that they did not belong to Mr. Cummings, and did belong to them."

This language wholly fails to notice the significance of the facts proved, all pointing to the ownership of the bonds in defendant. They were more than peculiar ; they were such facts as were inconsistent with the business sagacity of Cummings or any other business man, and seemingly, explicable, only on the theory of his insanity or eccentricity equivalent to insanity.

Up to this point the jury could scarcely have failed to regard the charge in any other light than as a direction to find for the plaintiffs ; at least, they must have concluded it was the decided opinion of the judge the defendant had presented no case worthy of more than a perfunctory, slighting notice. Such a charge on this evidence was not impartial ; it unduly magnified the absence of written entries in the book and belittled the evidence of defendant, which was of that character that it ill deserved such treatment. We would hesitate to express so decided an opinion, if conviction in any degree rested on the credibility of witnesses seen and heard by the court below, but neither seen nor heard by us ; but not a single fact is in dispute. A charge plainly calculated to mislead the jury is error. This principle is fully discussed in Pa. R. R. v. Berry, 68 Pa. 272, where AGNEW, J., cites to sustain it not less than eighteen cases decided up to that date, commencing with Bailey v. Fairplay, 6 Binney, 450,

decided in 1814, where the Court says : "The jury are to receive instructions from the court. If this instruction is given in such a manner as to mislead them, there is an error which ought to be corrected." In the latest case, Heydrick v. Hutchinson, 165 Pa. 208, decided last year, in an opinion by our Brother FELL, it·is said : "A charge whose tendency as a whole is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error."

Such as this last was substantially the charge of the court before us, in an issue involving a very large sum of money, and depending for its proper determination on correct inferences to be drawn from many facts. And that the jury at the end of the charge proper believed they were then in full possession of the case is altogether probable from this instruction, which immediately followed this last quotation from the charge : "Now those are the facts which are submitted for your consideration, and it is for you to say, and for you alone to say, whether those facts which they have proved, that the true ownership of those bonds is in the company and not in Mr. Cummings. That is the question which you will have to decide in this case "

True, the court then takes up the written points on both sides and answers them by the words "affirmed" and "refused," and prefaces this with the remark to the jury that probably he will thus better state his views on the evidence than if he should state them in his own language in the charge. We are not prepared to say an adequate and impartial charge could not under any circumstances have been given with these written points as the groundwork. The independent thoughts and language of counsel may be worked into a charge so as to form a symmetrical whole, and thus convey to the jury a correct statement of the law and facts. But we have had some observation and experience in jury trials, and our belief is, that seldom do the formal answers to points enlighten or influence the jury ; they are aware the point is the language and thought of counsel, and while they may not wholly disregard the instruction indicated by the answer, they give no such heed to it as they do to the charge proper. We think the method here adopted was wholly inadequate as a presentation of this important issue ; clearly, it did not cure the one-sidedness of the charge as first delivered, and which was the judge's own language and

54 PHILA. T., ETC., CO. *v.* PHILA., ETC., R. R., Appellant.

Opinion of the Court. [177 Pa.

thought. We therefore sustain appellant's eighth assignment of error so far as embraced in the second proposition of the argument, as follows: " 2. The trial judge erred in partially and inadequately submitting the case to the jury to defendant's prejudice."

We now take up the first proposition of appellant, that under the evidence the defendant was entitled to binding instructions in its favor.

The burden was on plaintiff to prove defendant owed the amount claimed; this was shown by the obligation or face of the bonds; the burden was on plaintiff further to show the amount was owing to him; this was proved prima facie by the presumption of fact which the law warrants from possession of the bonds. Thus far the burden of proof was on plaintiff; he assumed or carried it to a point which, in the absence of other evidence, entitled him to a verdict. The defendant then took it up to show that notwithstanding plaintiff's evidence, in equity and good conscience he ought not to recover; and this burden thus taken up cannot be shifted back to plaintiff except by such evidence as, did defendant rest, he would be entitled in law, without more, to a verdict. While the evidence adduced by defendant was very strong in support of its plea, we cannot say it was decisive; that was for the jury. The implied written disclaimer of ownership on the envelope was still retained in possession of Cummings—neither delivered by him to defendant nor to any one for it. And while all his other acts in connection with the bonds were consistent with this written disclaimer of ownership in himself, and acknowledgment of ownership in defendant, the retention of the disclaimer and the bonds in his physical possession left the case to turn on the weight of this evidence as opposed to the presumption arising from the possession. If a formal written declaration duly executed and delivered by Cummings, setting forth the bonds were not his, but belonged to the company, had been produced by defendant, that would have rebutted the presumption arising from the possession of the bonds, and the burden of proof would have been shifted; plaintiff would then have been bound to show the writing was obtained either by fraud or mistake. But as the case stood when the evidence closed the question was still for the jury notwithstanding the weight of the testimony

in defendant's favor; the failure of plaintiff to give any satisfactory explanation of the writing on the envelope only added to its significance as a disclaimer of right to the bonds. Therefore, this assignment is overruled.

The admission of the declarations of Cummings to Miss Ubil was clearly error. The case of plaintiff could not be made out by his ex parte declarations; it was pure hearsay, so far as concerned this defendant. We do not, however, consider it of much importance, or as having prejudiced defendant before the jury, but as the case must go back for retrial, we consider it our duty to pass upon this assignment, and pronounce it sustained, that the case may be relieved from the same technical error in the future.

The ninth and tenth assignments of error are to the rejection of the testimony of Mr. Roberts. The defendant offered to prove by the witness that shortly before the maturity of the bonds in 1877, he called upon Robert Thompson, then president of the defendant company, in reference to taking up the outstanding bonds, and inquiry was made as to this $24,000 of bonds; in response to this inquiry, President Thompson told him these bonds would never be presented. It seems very clear this testimony was admissible in view of the theory of plaintiff embodied in his fifth, sixth, seventh and eighth points. In each of these the court was asked to instruct the jury that the reports and statements of the company showing these bonds to be an outstanding existing indebtedness were evidence that Cummings held them, not as bailee, but for a valuable consideration. If this effect was to be given the official statements made with no qualification, certainly the official statement of the president, made in reference to the business of redeeming the bonds, was evidence tending to show this $24,000 was not an existing indebtedness, and no provision need be made for it. All these statements are by officers having no personal interest in declaring a falsehood or in concealing the truth. The official statements of officers who had access to the books and knew the indebtedness are some evidence of the actual indebtedness of the company at the time they were made. The correctness of these statements would depend altogether on the honesty, system and order in which the business was done in the early history of the road; the accuracy of the books and the candor

56 PHILA. T., ETC., CO. *v*. PHILA., ETC., R. R., Appellant.

Opinion of the Court. [177 Pa.

of the officers. What effect they should have in inducing belief or disbelief as to the issue of these twenty-four bonds to Cummings for value is another question altogether. The statement showed an outstanding indebtedness by bond in round numbers with no minutes evidencing these were intrusted to Cummings as bailee; therefore, plaintiff argued, the inference is, he held them as a purchaser for value; but no such inference necessarily follows; if pledged for loans by Cummings for the company, technically, they were an outstanding indebtedness, and continued so to be until restored to the possession of the company, or until his possession was determined a wrongful one. In its very best aspect the statements were only evidence to be considered in connection with all the other evidence bearing on the issue; of themselves, they were wholly without significance. They were not in law necessarily "material and persuasive evidence," as affirmed in the fifth point; nor evidence "from which the jury would be justified in drawing a conclusion," as affirmed in the sixth point; nor "presumptive evidence of the truth," as affirmed in the seventh point; nor such evidence as "would justify the jury in finding that the theory of their having been a bailment or trust in these bonds, was an afterthought." What effect the testimony should have was wholly for the jury in view of its character.

The logical conclusion from the unqualified affirmation of each one of these points should have been a peremptory instruction for plaintiff; for if the evidence was entitled to the effect asked for, that effect was that Cummings was absolute owner of the bonds for value. As framed, each point might properly have been unqualifiedly refused; it was error to unqualifiedly affirm them. But if the statements were used merely as evidence tending to establish these twenty-four bonds as an existing indebtedness, then the counter statement of President Thompson to Mr. Roberts, in effect that they were not part of such indebtedness, was clearly admissible.

The case was not tried in a manner calculated to draw from the court a clear and distinct enunciation of the law applicable to the facts, nor to present to the jury clearly the prominent facts on which the issue turned. Counsel on each side, instead of presenting clear legal propositions to the court for decision, seem to have embodied in many of their points conclusions of

fact so adroitly blended with the law that the result is both technical and substantial error.

The statement of counsel for plaintiff to the jury as to want of unanimity in this court in entering the former judgment, to use the mildest term, was unseemly. The record of a court of record, as every lawyer is presumed to know, is the only evidence of its proceedings ; no statement dehors the record is permitted to impeach its verity. But the total disregard of this rule is only equaled by the novelty of the proceedings in this trial. It would appear that the judgment of this court was being submitted for review to the jury, to be passed on by them ; its weight to be determined by the unanimity or want of it in the court which pronounced it. And this method of trial was adopted by counsel without rebuke from the court, in determining the rights of parties to the sum of $70,000. We think it better to adhere to the constitutional mode of trial, which certainly does not recognize the jury as a court of appeals from our judgments.

For the reasons given, the judgment is reversed and a v. f. d. n. awarded.